Filed 3/23/21  In re D.N. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APELLATE DISTRICT

| | |
|---|---|
| In re D.N., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>D.N.,<br><br>Defendant and Appellant. | F080624<br><br>(Super. Ct. No. 19CEJ600384-1)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  Gary D. Hoff, Judge.

Sangeeta Sinha, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and Kari Ricci Mueller, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Appellant D.N., a minor, challenges some of the terms and conditions of probation which the juvenile court imposed against him. Although we reject a majority of his claims, we agree that the court failed to articulate the required probable cause necessary to impose AIDS testing, and the record is insufficient to sustain that finding. We strike the AIDS testing condition but remand to provide the People with the opportunity to introduce evidence sufficient to support it. We otherwise affirm the disposition order.

## BACKGROUND

Appellant was 14 years old when this wardship petition was filed. It was alleged he had committed continuous sexual abuse in violation of Penal Code section 288.5, subdivision (a). The petition alleged that the victim was under 14 years of age, and appellant had unlawfully engaged in three or more acts of substantial sexual conduct.

The victim was seven years old and in the second grade when she testified in this matter. She and appellant are cousins. Appellant spent time with the victim and her older brother at the victim's residence in Fresno County.

*The Ongoing Sexual Abuse.*

The testimony from the victim established that, on at least three occasions, appellant touched her "private" with his hand or finger. These touchings occurred both over and under her underwear. During some of these encounters, appellant exposed his "private" to her. The victim believed these touchings may have started when she was in kindergarten, and they continued until she was in second grade. The victim testified that, in total, appellant touched her between "five and ten times."

During her testimony, the victim said appellant tried to lick her private on one occasion, but she could not remember if he actually succeeded. During a forensic interview, however, the victim had reported that appellant had licked her "private" once for about one second.

On one occasion, appellant took out his "private" from his pants. He asked the victim to touch it. During her testimony, she initially could not recall if she touched it but she later indicated that she had touched it. According to the victim, appellant also asked her to lick his private, but she refused. They lay on a bed and appellant moved his "private" towards her and he touched her private with his. His private touched her on her skin. Her panties were pulled down a little.

The final incident involved appellant touching the victim's "private" with his hand while at her house. He told her not to tell her parents what had happened. The victim, however, reported the final incident to her mother, and law enforcement was alerted.

*Appellant's Testimony.*

Appellant testified on his own behalf. The juvenile court learned that, when speaking with police officers, appellant had denied ever touching the victim inappropriately. In court, appellant denied ever touching the victim's vagina or underwear, putting his mouth on her vagina, asking her to touch his penis, or asking her to put her mouth on his penis.

*The Juvenile Court's Findings.*

At the conclusion of the contested hearing, the juvenile court noted that the victim and appellant had provided testimony that contained inconsistencies. The court credited the victim's testimony over appellant's denials of wrongdoing. The court found the victim's demeanor in court credible. Despite certain inconsistencies between her testimony and her forensic interview, the court also found credible her statements made during the forensic interview. The court determined the victim had no apparent or obvious reason to fabricate the allegations. The court found true that appellant had committed continuous sexual abuse of a child under 14 years of age.

At the December 4, 2019, disposition, appellant was adjudged a ward of the court. His maximum period of confinement was set at 16 years. He was placed on probation with certain terms and conditions. He was directed to reside with a parent or guardian.

## DISCUSSION

Appellant's various claims deal with the imposition of some of his conditions of probation. We use an abuse of discretion standard to review the juvenile court's imposition of these conditions. (*In re David C.* (2020) 47 Cal.App.5th 657, 661.)

I.   THE JUVENILE COURT DID NOT VIOLATE THE SEPARATION OF POWERS DOCTRINE WHEN IT AUTHORIZED THE PROBATION DEPARTMENT TO OFFER COMMUNITY SERVICE TO APPELLANT.

The first disputed probation condition occurred when the juvenile court authorized the probation department to offer appellant up to 50 hours of community service, with a cumulative total of 10 days, "to work off any alleged probation violations." The court commented that any sanction could also include GPS monitoring.[1] The court stated, "I would anticipate if there's any significant violation of any term and condition of the grant of probation here, that [appellant] would be brought back to court for additional recommendations, which most likely would include substantial amount of time in custody." The court issued a written disposition order which imposed 50 hours of community service to be administered at the direction of the probation department.

In August 2020, appellant's current counsel sent a letter alerting the court that its oral disposition had not imposed community service but, instead, had authorized it "in case of a future probation violation only and not as an immediate condition of probation." In September 2020, the juvenile court issued an amended written disposition order which omitted a community service requirement. Instead, the amended order states: "Probation

---

[1]   Appellant was on a GPS monitor during the contested hearing. At the conclusion of that hearing, the juvenile court ordered him to remain on GPS pending disposition. At the disposition hearing, the court ordered appellant to remain on the GPS program for at least three months.

4.

is authorized to offer [appellant] up to 50 hours of community service, or up to a cumulative total of 10 days on the community service work program as an option to work off alleged probation violations." It also ordered that appellant would remain on GPS for three months.

Appellant argues that the juvenile court violated his due process rights by improperly delegating its authority to the probation officer to decide if and when he is in violation of probation. He contends this violates the separation of powers doctrine, and this condition must be stricken. In contrast, respondent asserts that appellant has forfeited this claim in failing to raise it below. In the alternative, respondent maintains this claim fails on its merits because the juvenile court "essentially imposed the community service and GPS monitoring conditions on appellant . . . but left the probation department discretion over when (if ever) to utilize it." Respondent argues that this was a permissible delegation of authority.

We disagree with respondent that we should apply the forfeiture doctrine in this situation. In any event, we conclude that the court did not improperly delegate its authority.

### A. *We Decline to Find Forfeiture.*

It is undisputed that appellant's counsel below did not object to the imposition of this probation condition. Generally, the failure to object to a probation condition at sentencing forfeits its later challenge. (*People v. Welch* (1993) 5 Cal.4th 228, 237.) However, exceptions exist when the challenge raises a question of pure law that can be resolved without reference to the sentencing record. (*In re Sheena K.* (2007) 40 Cal.4th 875, 888–889.) We review such an issue de novo. (*People v. Pirali* (2013) 217 Cal.App.4th 1341, 1345.)

The parties dispute whether appellant has forfeited this claim. We agree with appellant that this issue involves a pure question of law. We can resolve this claim

without referring to any disputed facts. Accordingly, we decline to find forfeiture in this situation and we will address the merits.

> B. *The juvenile court properly delegated its authority.*

Under the separation of powers doctrine, executive or administrative officers cannot exercise or interfere with judicial powers. (*In re Danielle W.* (1989) 207 Cal.App.3d 1227, 1235.) However, a nonjudicial officer may be authorized to perform quasi-judicial powers to determine facts and exercise discretion. (*Id.* at p. 1236.) A court may delegate its authority to a nonjudicial officer so long as (1) it is incidental or subsidiary to a function or power otherwise properly exercised by the court and (2) the court retains ultimate control over it, such as through court review. (*Ibid.*)

Although a juvenile court may not delegate its judicial discretion to the probation department, probation can be authorized to determine how best to implement the details of a particular condition. (*In re Victor L.* (2010) 182 Cal.App.4th 902, 919 (*Victor L.*); *In re Pedro Q.* (1989) 209 Cal.App.3d 1368, 1372–1373.) As such, it is generally permissible for a juvenile court to delegate to a probation officer or social worker the time, place and manner of compliance for an imposed probation condition, such as visitation.[2] (See *In re Moriah T.* (1994) 23 Cal.App.4th 1367, 1374; *In re Danielle W., supra,* 207 Cal.App.3d at p. 1237.) On the other hand, a juvenile court may not delegate to a probation officer the authority to decide if and when a minor is in violation of probation. (See *In re Gabriel T.* (2016) 3 Cal.App.5th 952, 958 [finding error when at "any time" while the juvenile attended an aftercare program, the minor could be returned to a correctional academy "'for a one time remediation of 30 days due to a violation of probation or program rules.'"].) Instead, a judicial finding is required, after proper

---

[2] However, when a visitation order delegates to the probation office or county welfare department the absolute discretion to determine whether any visitation occurs, the order violates the separation of powers doctrine. (*In re Moriah T., supra,* 23 Cal.App.4th at p. 1374.)

6.

statutory notice, to determine if a minor can be removed from his or her home.  (*Id.* at pp. 960–961.)

In this matter, we disagree with appellant that the juvenile court improperly delegated its authority.  Two cases cited by respondent are instructive.

In *Victor L., supra,* 182 Cal.App.4th 902, the appellate court held that an impermissibly vague probation condition requiring a minor to stay away from areas of "gang-related activity" could be saved by giving the probation officer the power to determine whether this condition should be defined geographically or by activity.  (*Id.* at pp. 917–918.)  This was not an unlawful delegation of power because the probation officer's discretion was limited.  (*Id.* at pp. 918–919.)

In *People v. Penoli* (1996) 46 Cal.App.4th 298 (*Penoli*), the trial court placed the defendant on probation after she pled guilty to possessing methamphetamines.  The trial court authorized the probation department to select a drug rehabilitation program of its choice, and it ordered the defendant to remain there until she successfully completed that program (with no credit for time served while in the program).  (*Penoli, supra,* at p. 301.)  On appeal, the *Penoli* court declined to hold that this delegation of authority was erroneous.  (*Id.* at p. 308.)  As conceded by the defense, any attempt to specify a particular program at or prior to sentencing would pose serious practical difficulties, and the trial court was poorly equipped to micromanage the selection of a program.  (*Ibid.*)  In addition, this delegation did not place the defendant "completely at the mercy of the probation department."  (*Ibid.*)  The defendant was permitted to bring any concerns it had to the court's attention.  The defendant could also seek judicial intervention by moving to modify the probation order if the probation officer sought to exercise the delegated authority.  (*Ibid.*)

Similar to *Victor L.*, the discretion granted to the probation officer was limited. (See *Victor L., supra,* 182 Cal.App.4th at pp. 918-919.)  Probation could only offer

appellant the option of community service if an alleged violation occurred. Moreover, the total hours of community service were capped at 50.

Similar to the situation in *Penoli*, it is not reasonable for the juvenile court to micromanage the daily supervision of appellant, and appellant is not at the mercy of the probation department because he can seek judicial intervention if necessary. (See *Penoli, supra,* 46 Cal.App.4th at p. 308.) Appellant's parents "or other person having an interest" in him may petition the court "to change, modify, or set aside" this condition. (Welf. & Inst. Code, § 778, subd. (a)(1).)

We disagree with appellant that this delegation permitted the probation officer to decide if and when a violation of probation had occurred. The probation officer was not given absolute discretion. (See *In re Jennifer G.* (1990) 221 Cal.App.3d 752, 758 [a visitation order delegating "complete and total discretion" to a probation office or county welfare department would violate the separation of powers doctrine and be invalid].) Instead, the court permitted the probation officer to offer appellant the option of community service for an alleged violation. The juvenile court set the basic condition, but it left the specific details to the probation officer and appellant to resolve. We conclude that this represents a permissible delegation of authority. (See *Victor L., supra,* 182 Cal.App.4th at p. 919.)

We reject appellant's arguments that the court violated the separation of powers doctrine. Instead, the court delegated incidental authority regarding possible community service, and the court retained ultimate control over this issue. Thus, we discern no abuse of discretion, and this claim fails.

II.    THE JUVENILE COURT DID NOT ABUSE ITS DISCRETION REGARDING THE IMPOSITION OF OTHER CONDITIONS OF PROBATION.

The parties dispute whether additional imposed probation conditions fail the test articulated in *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*), superseded by statute as stated in *People v. Moran* (2016) 1 Cal.5th 398, 403, fn. 6. Under *Lent*, a probation condition

"will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' " (*Lent, supra,* at p. 486.) Under the *Lent* test, "all three prongs must be satisfied before a reviewing court will invalidate a probation term." (*People v. Olguin* (2008) 45 Cal.4th 375, 379.) The *Lent* test governs both juvenile and adult probation cases. (*In re Ricardo P.* (2019) 7 Cal.5th 1113 (*Ricardo P.*).)

Appellant challenges four probation conditions involving (1) curfew; (2) chemical testing for substances; (3) warrantless searches; and (4) substance abuse assessment, counseling or treatment. According to appellant, these conditions fail *Lent* because they are unrelated to his crime, they forbid otherwise lawful conduct, and they are not reasonably related to deterring future criminality.

We reject appellant's arguments. An abuse of discretion is not present, and each of these conditions satisfies *Lent*.[3]

### A. The Curfew.

The juvenile court prohibited appellant from being outside his home between 8:00 p.m. and 6:00 a.m. if unaccompanied by his parent or an adult designated by his parent. The written disposition order directs appellant to obey curfew from 8:00 p.m. until 6:00 a.m. as ordered by the probation officer.

---

[3] It is undisputed that appellant's defense counsel failed to object to the imposition of these four conditions of probation. The parties dispute whether appellant received ineffective assistance. We need not resolve that disagreement. Instead, the juvenile court did not abuse its discretion in imposing these conditions of probation. As such, even if forfeiture did not occur, these claims fail on their merits. Thus, we need not analyze any alleged ineffective assistance. An attorney is not deemed incompetent when he or she fails to lodge meritless objections. (*People v. Lucero* (2000) 23 Cal.4th 692, 732.) A defense attorney is not required to make futile motions or to engage in " 'idle acts to appear competent.' [Citation.]" (*People v. Scheer* (1998) 68 Cal.App.4th 1009, 1024.)

Appellant contends this curfew was not based on his background and needs, and it improperly infringes on his constitutional right to free movement. He asserts this condition does not address any behavioral problems or the need for greater parental supervision. He notes that, stemming from the probation report, he had exhibited good behavior at home, he helps around the house, he has not acted out of control, and he demonstrates appropriate respect for his father. He argues there is no showing he was difficult to discipline or that he required an elevated amount of supervision.

We find appellant's arguments unpersuasive. By statute, a juvenile court must impose a curfew from 10:00 p.m. to 6:00 a.m. when a minor is adjudged a ward of the court and he or she is not removed from the physical custody of his or her parents. (Welf. & Inst. Code, § 729.2, subd. (c).) A juvenile court, however, may impose a longer curfew than this statute, which serves as "a floor" and "not a ceiling" for juvenile probation conditions. (*In re Walter P.* (2009) 170 Cal.App.4th 95, 99.) In general, a juvenile court is empowered to enhance the reformation and rehabilitation of a ward. (Welf. & Inst. Code, § 730, subd. (b).)

The probation report noted that appellant's father had imposed a curfew for appellant to be home "by dark[.]" The report also stated that appellant had an extensive history of intervention at school for disciplinary reasons related to disrespectful behavior. Appellant's grades in high school had been poor. At the disposition hearing, the juvenile court stated it had read the probation report.

In light of appellant's situation, the imposed curfew appears appropriate. The additional two hours of curfew will reasonably enhance appellant's reformation and rehabilitation, and it reinforces the father's informal curfew. The curfew is also reasonably related to future criminality. The court found true that appellant had engaged in ongoing sexual abuse of a minor much younger than himself. The curfew will ensure that appellant is home in the early evenings and he will be under the supervision of an adult. Consequently, *Lent* is satisfied, and the court did not abuse its discretion.

10.

B.		*The Chemical Testing.*

The court ordered appellant to "[s]ubmit to chemical testing to detect the use of narcotics, alcohol, and other controlled substances."  Appellant argues this condition bears no relationship to his crime, it relates to lawful criminal conduct, and it is not reasonably related to deterring future criminal conduct.  He notes that neither his crime nor his social history reveal a concern about alcohol or substance abuse.

Respondent concedes that nothing in this record indicates that appellant was under the influence of drugs or alcohol at the time he undertook his criminal behavior.  Respondent, however, relies primarily on *In re Kacy S.* (1998) 68 Cal.App.4th 704 (*Kacy S.*).

In *Kacy S.*, the juvenile court ordered random urine testing even though alcohol and drugs were not implicated in the minors' offenses or social histories.  The appellate court affirmed.  The urine testing was "designed to detect the presence of substances whose use by minors *is unlawful*.  [Citations.]"  (*Kacy S., supra,* 68 Cal.App.4th at p. 710.)  As such, the testing related to conduct which was criminal and it also reasonably related to future criminality.  (*Ibid.*)  *Kacy S.* held that such a probation condition, even when alcohol or drugs were not involved in the minor's offense, satisfied *Lent.*  (*Kacy S., supra,* 68 Cal.App.4th at p. 710.)

Appellant criticizes the *Kacy S.* opinion, contending it did not properly analyze for abuse of discretion and, instead, it simply examined the statutory language of Welfare and Institutions Code section 729.3.[4]  Appellant also complains the *Kacy S.* court only focused on the limited intrusion of *urine* testing, and it did not consider the added burdens of blood, breath and saliva testing.  Finally, appellant asserts that *Ricardo P.* limits any precedential or persuasive value of *Kacy S.*

---

**4**		A urine test to determine the presence of alcohol or drugs may be imposed as a condition of juvenile probation if the minor is not removed from the physical custody of his or her parent or guardian.  (Welf. & Inst. Code, § 729.3.)

11.

In *Ricardo P.*, the juvenile court ordered the minor to submit to warrantless searches of his electronic devices (and those accounts that could be accessed through those devices). (*Ricardo P., supra,* 7 Cal.5th at p. 1115.) There was no indication the minor had used an electronic device during the commission of his burglaries, but this condition was imposed to monitor his compliance with other conditions prohibiting him from using or possessing illegal drugs. (*Ibid.*) On appeal, the California Supreme Court assumed that the first and second *Lent* requirements were satisfied (i.e., that an electronic device had no relationship to the juvenile's burglaries and this did not involve something that was itself criminal). (*Ricardo P., supra,* at p. 1119.) The focus turned to *Lent*'s third prong--whether the electronic search condition required or forbade conduct which is not reasonably related to future criminality. (*Ricardo P., supra,* at p. 1119.) Nothing indicated that the juvenile had used, or would use, electronic devices in connection with drugs or any illegal activity. (*Id.* at p. 1116.) Thus, there was an insufficient basis "to justify the substantial burdens imposed by this electronics search condition. The probation condition is not reasonably related to future criminality and is therefore invalid under *Lent*." (*Ibid.*) The high court explained that any probation condition must be reasonably related to future criminality. This "contemplates a degree of proportionality between the burden imposed by a probation condition and the legitimate interests served by the condition." (*Id.* at p. 1122.)

The *Ricardo P.* court also stated it was not appropriate to "categorically permit" a probation condition just because it was "reasonably related to enhancing the effective supervision of a probationer. 'Not every probation condition bearing a remote, attenuated, tangential, or diaphanous connection to future criminal conduct can be considered reasonable' under *Lent*. [Citation.]" (*Ricardo P., supra,* 7 Cal.5th at p. 1127.) Such an approach "would effectively eliminate the reasonableness requirement in *Lent*'s third prong, for almost any condition can be described as 'enhancing the effective supervision of a probationer.' " (*Ibid.*)

12.

Appellant notes that the *Ricardo P.* court "endorsed" a finding that using an electronic device is not itself criminal. Using that as a foundation, appellant argues that testing for substance abuse should be considered conduct that is not itself unlawful, meeting the second prong of *Lent*.

We reject appellant's argument. *Ricardo P.* cannot be read as endorsing an assertion that drug testing as a condition of probation relates to conduct that is not itself unlawful. *Ricardo P.* made no such pronouncement and it is not reasonable to infer such a holding from that opinion. Cases are not authority for propositions not considered or decided. (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1134.)

Appellant also contends that, under the holding in *Kacy S.*, *any* chemical testing regardless of the minor's circumstances would satisfy *Lent*. He maintains that such an outcome violates his constitutional rights, and he notes that the juvenile court made no findings that would justify this condition.

We disagree that the juvenile court abused its discretion or violated appellant's constitutional rights in imposing this condition. It is undisputed that juveniles enjoy a right of privacy protected by the California Constitution. (*In re Carmen M.* (2006) 141 Cal.App.4th 478, 490.) However, the scope and application of that right differs significantly from the rights enjoyed by adults. (*Id.* at p. 492.) When analyzing a legally recognized privacy interest, a court must weigh the justification for the conduct in question against the privacy intrusion. (*Ibid.*)

A juvenile court should consider the minor's entire social history and the circumstances of the crime. Each juvenile probation condition must fit the juvenile's circumstances. (*In re P.O.* (2016) 246 Cal.App.4th 288, 293–294.) "The permissible scope of discretion in formulating terms of juvenile probation is even greater than that allowed for adults." (*Victor L., supra,* 182 Cal.App.4th at p. 910.) This is because juveniles need more guidance and supervision than adults, and because a juvenile's constitutional rights are more circumscribed. (*Ibid.*) Thus, " 'a condition of probation

13.

that would be unconstitutional or otherwise improper for an adult probationer may be permissible for a minor under the supervision of the juvenile court.' " (*In re Sheena K., supra,* 40 Cal.4th at p. 889.)

In the present matter, appellant was required to obey all laws while on probation. As a minor, he could not lawfully possess or use alcoholic beverages. (*In re Jose R.* (1982) 137 Cal.App.3d 269, 279.) Moreover, there are numerous statutes which prohibit both adults and minors from possessing or using narcotics, and appellant was obliged to obey those laws as well. (*Ibid.*)

Although appellant does not have a prior juvenile record, he has displayed ongoing behavioral issues at school. In addition, the probation report noted that both of appellant's parents had prior criminal records for operating a vehicle under the influence of alcohol. (Veh. Code, § 23152, subd. (a).) Under the circumstances, we cannot state that the juvenile court's order requiring him to submit to chemical testing to detect the use of narcotics, alcohol, and other controlled substances was unreasonable. There is evidence that appellant may be exposed to alcohol through his parents. Moreover, this order appears justified, at least in part, based on the court's "general responsibility for the health and well-being of dependent children within its jurisdiction." (*In re Carmen M., supra,* 141 Cal.App.4th at p. 494.)

Finally, our Supreme Court in *Ricardo P.* stated that a "nexus" is not required between a probation condition and the underlying offense. Instead, any required nexus "would essentially fold *Lent*'s third prong into its first prong. We have said that 'conditions of probation aimed at rehabilitating the offender need not be so strictly tied to the offender's precise crime' [citation] so long as they are 'reasonably directed at curbing [the defendant's] future criminality' [citation]. For example, courts may properly base probation conditions upon information in a probation report that raises concerns about future criminality unrelated to a prior offense. [Citation.]" (*Ricardo P., supra,* 7 Cal.5th at p. 1122.) The *Ricardo P.* court clarified that "a degree of proportionality" is required

"between the burden imposed by a probation condition and the legitimate interests served by the condition." (*Ibid.*)

We disagree that this probation condition impermissibly infringes on appellant's constitutional rights. The burden placed on appellant is not disproportionate to its justification. This condition is reasonably related to future criminality, which satisfies *Lent*. This record does not demonstrate a manifest abuse of discretion. Accordingly, we reject this claim.

### C. The Warrantless Search and Seizure.

The court ordered appellant to submit his person and property to search and seizure by a peace or probation officer with or without a warrant. Appellant argues that this condition bears no relationship to his crime, his background or his needs. He contends it infringes on his constitutional right to be free from unreasonable searches and seizures. He notes that he did not use any device, object or tool when he committed the continuous sexual abuse. He asserts that he has not exhibited behavior such as substance abuse or theft to justify this condition.

We reject appellant's contention that this condition improperly violates his constitutional rights. The juvenile court found true that appellant had engaged in continuous acts of sexual abuse of his much younger cousin. The probation officer alerted the court that appellant had exhibited "negative behavior" outside the home, and the officer was concerned that appellant lacked the ability to accept responsibility for his actions.

Prior to *Ricardo P.*, our high court held that a condition of probation that enables a probation officer to supervise his or her charge is reasonably related to future criminality, and, thus, *Lent* is satisfied. (*People v. Olguin, supra,* 45 Cal.4th at pp. 380–381.) "Proper supervision includes the ability to make unscheduled visits and to conduct unannounced searches of the probationer's residence. Probation officer safety during

15.

these visits and searches is essential to the effective supervision of the probationer and thus assists in preventing future criminality."[5] (*Id.* at p. 381.)

The *Ricardo P.* court noted that an electronic search has a potentially far greater reach than a traditional property or residence search. Importantly, the high court stated that the *Ricardo P.* opinion should not be read to impair a juvenile court's ability to impose traditional search conditions in future cases when warranted. (*Ricardo P., supra,* 7 Cal.5th at 1127.)

In this situation, a warrantless search and seizure condition is reasonably related to future criminality, and it directly aids in the supervision of appellant as he completes his rehabilitation. This situation is not like *Ricardo P.*, and the burdens placed on appellant are not disproportionate to the justifications. *Lent* is satisfied and we find no abuse of discretion.

D. *Attending Substance Abuse Assessment, Counseling or Treatment.*

The juvenile court ordered appellant to attend "substance abuse assessment, counseling, or treatment as ordered by the Probation Officer." Appellant argues that this condition bears no relationship to his offense, it does not relate to conduct that is criminal, and it is not reasonably related to deterring any future criminality. He contends that this condition does not satisfy *Lent* and it must be stricken.

Respondent concedes that nothing in this record indicates that appellant was under the influence of drugs or alcohol at the time he undertook his criminal behavior. According to respondent, however, using drugs and alcohol "lessens self-control and impairs reasoning," which are issues appellant struggled with during his engagement of criminal behavior. Respondent also notes a connection exists between alcohol

---

[5] The *Ricardo P.* court subsequently declined to read *People v. Olguin* "to categorically permit any probation conditions reasonably related to enhancing the effective supervision of a probationer." (*Ricardo P., supra,* 7 Cal.5th at p. 1127.) Nevertheless, the *Ricardo P.* court did not overrule its prior language in *People v. Olguin*.

consumption and drug use. Respondent contends that the juvenile court acted within its discretion, and this condition gave the probation officer "flexibility" to provide additional resources to appellant "based on the results of those chemical tests." Respondent maintains that this probation condition was reasonable.

The probation report suggests that appellant may have access to alcohol through his parents. In addition, this condition enables the probation officer to supervise appellant more effectively. (See *People v. Olguin, supra,* 45 Cal.4th at pp. 380–381.) Any burden placed on him by this condition is minimal compared to the interests it serves. In light of appellant's circumstances, we cannot state that this condition is unreasonable. This record does not demonstrate a manifest abuse of discretion, and we reject this claim.

III. THIS MATTER MUST BE REMANDED TO GIVE THE PROSECUTION THE OPPORTUNITY TO PRESENT ADDITIONAL EVIDENCE TO ESTABLISH PROBABLE CAUSE TO IMPOSE AIDS TESTING.

Appellant claims insufficient evidence supports the juvenile court's order that he submit to AIDS testing pursuant to Penal Code section 1202.1.

At the disposition hearing, the juvenile court ordered appellant to "submit to AIDS testing as required by law, pursuant to Penal Code section 1202.1." The court's written disposition order states that appellant is to submit to testing.[6] In imposing this testing condition, it is undisputed that the court failed to state reasons for imposing it. It is also undisputed that appellant's counsel failed to object below when this condition was imposed.

---

[6] The court's original written disposition order stated that appellant was to submit to testing and "register with [a] local law enforcement agency" pursuant to Penal Code section 1202.1. However, in August 2020, appellant's current counsel sent a letter to the juvenile court alerting the court that its oral disposition had not required appellant to register with a law enforcement agency. In September 2020, the juvenile court issued an amended written disposition order which omitted any requirement for appellant to register with a law enforcement agency.

17.

"Involuntary AIDS or human immunodeficiency virus (HIV) testing is strictly limited by statute. [Citations.]" (*People v. Guardado* (1995) 40 Cal.App.4th 757, 763.) Penal Code section 1202.1, subdivision (a), requires a court to order every person convicted of certain enumerated sexual offenses to submit to "a blood or oral mucosal transudate saliva test for evidence of antibodies to the probable causative agent of acquired immune deficiency syndrome (AIDS) within 180 days of the date of conviction." Conviction of a sexual offense listed in subdivision (e) triggers mandatory testing. (Pen. Code, § 1202.1, subd. (e)(1)–(5).) Other enumerated sexual offenses trigger the testing "if the court finds that there is probable cause to believe that blood, semen, or any other bodily fluid capable of transmitting HIV has been transferred from the defendant to the victim[.]" (*Id.* at subd. (e)(6).) Continuous sexual abuse of a child in violation of Penal Code section 288.5 falls into this latter category. (Pen. Code, § 1202.1, subd. (e)(6)(A)(iv).)

In the absence of an objection in the lower court, a defendant forfeits the right to appeal the failure of the court to make the statutorily-required factual findings supporting an HIV test order pursuant to Penal Code section 1202.1, subdivision (e)(6). (*People v. Stowell* (2003) 31 Cal.4th 1107, 1117.) However, a defendant may challenge the imposition of the testing order on the ground of insufficiency of the evidence to support a finding of probable cause, despite the failure to object. (*People v. Butler* (2003) 31 Cal.4th 1119, 1123.) An appellate court reviews the evidence de novo to determine whether the record reveals probable cause sufficient to support the testing order. (*Id.* at p. 1127.) If probable cause is lacking based on the appellate record, the appropriate remedy is to remand the matter for further proceedings to provide the prosecution with the opportunity to present additional evidence that may establish the necessary probable cause. (*Id.* at p. 1129.)

"Probable cause is an objective legal standard—in this case, whether the facts known would lead a person of ordinary care and prudence to entertain an honest and

strong belief that blood, semen, or any other bodily fluid capable of transmitting HIV has been transferred from the defendant to the victim." (*People v. Butler, supra,* 31 Cal.4th at p. 1127.) If a trial court orders AIDS testing without articulating its required reasons on the record, an appellate court will presume an implied finding of probable cause, but "the appellate court can sustain the order only if it finds evidentiary support, which it can do simply from examining the record." (*Ibid.*)

Appellant argues he never ejaculated, and neither blood nor other bodily fluids capable of transmitting HIV transferred from him to the victim. Without filing a request for judicial notice, appellant provides a hyperlink to a website for the Centers for Disease Control and Prevention in support of his argument that saliva is incapable of transferring HIV.

In contrast, respondent notes our Legislature has recognized that oral copulation can result in a transfer of bodily fluid capable of transmitting HIV. (See Pen. Code, § 1202.1, subd. (e)(5).) Respondent argues that appellant orally copulated the victim, so this probation condition should be affirmed. In the alternative, respondent notes that, if this court finds insufficient evidence of probable cause, the proper remedy is to remand this matter for further proceedings.

Because it is outside the appellate record, we will not consider the information contained via the hyperlink in footnote 10 of appellant's opening brief at page 42 regarding the transmission of HIV. (See *Shamsian v. Atlantic Richfield Co.* (2003) 107 Cal.App.4th 967, 975, fn. 5 [appellate courts will not typically take judicial notice of matters outside the appellate record].) Nevertheless, we agree with appellant that this record does not contain substantial evidence sufficient to make an implied finding of probable cause.

The victim testified during the jurisdictional hearing that appellant tried to orally copulate her, but she could not remember if he actually did. However, during her

forensic interview, the victim reported that appellant had on one occasion licked her "private" but the licking only lasted one second.

Although our Legislature recognizes that oral copulation can trigger the necessity for an AIDS test (see Pen. Code, § 1202.1, subd. (e)(5)), we cannot declare that the facts in this case "would lead a person of ordinary care and prudence to entertain an honest and strong belief that blood, semen, or any other bodily fluid capable of transmitting HIV" was transferred from appellant to the victim. (*People v. Butler, supra,* 31 Cal.4th at p. 1127.) Based on the current record, substantial evidence does not exist to make an implied finding of probable cause. We will strike this probation condition, but remand this matter to give the prosecution the opportunity to present additional evidence on this issue. (*Id.* at p. 1129.)

IV.     REMAND IS NOT NEEDED TO CLARIFY THE COURT'S DISPOSITION.

The parties agree, as do we, that the juvenile court made inconsistent findings when rendering its disposition order. The court initially stated that physical custody should be taken from appellant's parents and that "continuation in the home with a parent" would be contrary to appellant's welfare. However, the court later orally ordered that appellant would reside in the home of a parent or guardian under various conditions of probation. The court's written amended disposition order likewise directs appellant to reside with a parent or guardian.

The parties ask us to strike the court's erroneous oral finding that "physical" custody be taken from a parent. In the alternative, they seek a remand so the court can clarify its comments. We disagree that we should strike the court's finding or that further clarification is needed.

Generally, a judgment is "the final determination of the rights of the parties in an action or proceeding." (Code Civ. Proc., § 577.) " 'More specifically, the "judgment" in a juvenile court proceeding is the order made after the trial court has found facts

20.

establishing juvenile court jurisdiction and has conducted a hearing into the proper disposition to be made.' " (*Ricki J. v. Superior Court* (2005) 128 Cal.App.4th 783, 789.) Hence, the disposition order is akin to a judgment.

Rendition of judgment is an oral pronouncement. (*People v. Mesa* (1975) 14 Cal.3d 466, 471.) Generally, when there is a discrepancy between the minute order and the oral pronouncement of judgment, the oral pronouncement controls. (*People v. Contreras* (2015) 237 Cal.App.4th 868, 880; accord *People v. Farell* (2002) 28 Cal.4th 381, 384, fn. 2.) Because entering judgment in the minutes is a clerical function, a discrepancy between the judgment as orally pronounced and as entered in the minutes is presumably a clerical error. (*People v. Mesa, supra,* at p. 471; Pen. Code, § 1207.) An appellate court may correct clerical errors appearing in abstracts of judgment. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

In this matter, probation had recommended physical custody be taken from appellant's parents. The court, however, disagreed and determined it was in appellant's best interest that he receive therapy and avoid time in custody. It is clear that the court was reading from the probation report when it misspoke regarding the removal of physical custody.

Although the court initially misspoke, it is also clear that the court's oral pronouncement directed appellant to remain in the physical custody of a parent. The court's written order is consistent with that oral pronouncement, and it directs appellant to reside with a parent. Thus, there is no material disagreement between the court's oral pronouncement of the disposition, and the written disposition order. Consequently, we reject the assertions that correction is required or that remand is needed to clarify this issue. Instead, we will affirm the court's disposition order which directed appellant to reside in the home of a parent or guardian as a condition of probation.

**DISPOSITION**

The probation condition requiring appellant to submit to testing pursuant to Penal Code section 1202.1 is stricken. The matter is remanded to the juvenile court. No later than 30 days after this court's remittitur is filed in the lower court, the People may elect in writing to present additional evidence on the issue of whether the juvenile court should order AIDS blood testing under Penal Code section 1202.1. If the People make such an election, the juvenile court shall conduct further proceedings on that issue. In all other respects, the disposition order appealed from is affirmed.

FRANSON, J.

WE CONCUR:

LEVY, Acting P.J.

MEEHAN, J.

22.